# EXHIBIT 1



# COMMONWEALTH *of* VIRGINIA

### *Secretary of the Commonwealth*

POST OFFICE BOX 2452                                                        RICHMOND, VIRGINIA 23218-2452

## NOTICE OF SERVICE OF PROCESS

Axonics Modulation Technologies, Inc.                        1/25/2021
15326 Alton Pkwy
Irvine, CA 92618


Jeffrey M. Etter

vs.

Axonics Modulation Technologies, Inc.

**Summons and Complaint**



Dear Sir/Madam:

You are being served with the enclosed notice under section 8.01-329 of the Code of Virginia
which designates the Secretary of the Commonwealth as statutory agent for Service of Process.

If you have any questions about the matter, PLEASE contact <u>the CLERK of the enclosed/below
mentioned court</u> or any attorney of your choice. <u>Our office does not accept payments on behalf
of debts.</u> The Secretary of the Commonwealth's ONLY responsibility is to mail the enclosed
papers to you.

COURT:

Norfolk Circuit Court
150 Saint Pauls Boulevard
Norfolk, VA 23510

Service of Process Clerk
Secretary of the Commonwealth's
Office

## AFFIDAVIT FOR SERVICE OF PROCESS ON THE SECRETARY OF THE COMMONWEALTH

Case No. ........................ CL20011930-00

Commonwealth of Virginia     VA. CODE §§ 8.01-301, -310, -329; 55-218.1; 57-51

...................................................... Norfolk ...................................................... Circuit Court

Jeffrey M. Etter

v.

AXONICS MODULATION TECHNOLOGIES, INC.,

and

RAYMOND COHEN

TO THE PERSON PREPARING THIS AFFIDAVIT: You must comply with the appropriate requirements listed on the back of this form.

| Attachments: | [✗] Summons and Complaint | [ ] Notice |
| | | [ ] |

I, the undersigned Affiant, state under oath that

[ ] the above-named defendant   [✗] ..... AXONICS MODULATION TECHNOLOGIES, INC.

whose last known address is   [ ] same as above  [✗] ..... 15326 ALTON PKWY, IRVINE, CA 92618

1.  [✗] is a non-resident of the Commonwealth of Virginia or a foreign corporation and Virginia Code § 8.01-328.1(A) applies (see NON-RESIDENCE GROUNDS REQUIREMENT on page 2).

2.  [ ] is a person whom the party seeking service, after exercising due diligence, has been unable to locate (see DUE DILIGENCE REQUIREMENT ON BACK)

........................................................... is the hearing date and time on the attached process or notice (if applicable).

01/12/2021
DATE          James Taylor (VA Bar #83113)
              [ ] PARTY [✗] PARTY'S ATTORNEY [ ] PARTY'S AGENT [ ] PARTY'S REGULAR AND *BONA FIDE* EMPLOYEE

State of ..... *Virginia* .....   [ ] City [✗] County of ..... *Roanoke*

Acknowledged, subscribed and sworn to before me this day by ..... James Taylor
                                                                    PRINT NAME OF SIGNATORY

1-12-2021
DATE          Commonwealth Of Virginia      Christie Hancock Carwile
              Christie Hancock Carwile - Notary Public   [ ] CLERK   [ ] MAGISTRATE   [✗] NOTARY PUBLIC
              Commission No. 7212840
              My Commission Expires May 31, 2021       Notary Registration No. 721 2 840 ..... My commission expires: 5-31-2021

[ ] Verification as provided in § 8.01-329 regarding of the certificate of compliance is requested. A self-addressed stamped envelope was provided to the clerk at the time of filing this Affidavit.

NOTICE TO THE RECIPIENT from the Office of the Secretary of the Commonwealth of Virginia:
   You are being served with this notice and attached pleadings under Section 8.01-329 of the Code of Virginia which designates the Secretary of the Commonwealth as statutory agent for Service of Process. The Secretary of the Commonwealth's ONLY responsibility is to mail, by certified mail, return receipt requested, the enclosed papers to you. If you have any questions concerning these documents, you may wish to seek advice from a lawyer.
   SERVICE OF PROCESS IS EFFECTIVE ON THE DATE WHEN SERVICE IS MADE ON THE SECRETARY OF THE COMMONWEALTH.

### CERTIFICATE OF COMPLIANCE

I, the undersigned, Clerk in the Office of the Secretary of the Commonwealth, hereby certify the following:

1.  On ..... JAN 1 4 2021 ..... , legal service in the above-styled case was made upon the Secretary of the Commonwealth, as statutory agent for persons to be served in accordance with Section 8.01-329 of the Code of Virginia, as amended.

2.  On ..... JAN 2 6 2021 ..... , papers described in the Affidavit and a copy of this Affidavit were forwarded by certified mail, return receipt requested, to the party designated to be served with process in the Affidavit.

SERVICE OF PROCESS CLERK, DESIGNATED
BY THE AUTHORITY OF THE SECRETARY OF THE COMMONWEALTH

**V I R G I N I A:**

**IN THE CIRCUIT COURT OF NORFOLK**

**JEFFREY M. ETTER,**

    **Plaintiff,**

**v.**                                  **Civil Case No.:**

**AXONICS MODULATION TECHNOLOGIES, INC.,**

**Serve:**

INTERIM CLERK OF THE STATE CORPORATION COMMISSION
ATTN: BERNARD LOGAN
SERVICE OF PROCESS
1300 EAST MAIN ST.
RICHMOND, VA 23219

**And**

**RAYMOND COHEN**

**Serve:**

AXONICS MODULATION TECHNOLOGIES, INC.
ATTN: CEO RAYMOND COHEN
15326 ALTON PKWY,
IRVINE, CA 92618

    **Defendants.**

## COMPLAINT

COMES NOW the Plaintiff, Jeffrey M. Etter (hereafter "Plaintiff"), by counsel, and

for his complaint against Defendants Axonics Modulation Technologies, Inc., Raymond

W. Cohen, (hereafter collectively "Defendants"), states as follows:

### PARTIES

1.    Plaintiff Jeffrey Etter is a citizen of the Commonwealth of Virginia and

resides in Chesapeake, VA. Plaintiff was employed by Defendant Axonics Modulation

Technologies, Inc. from January 15, 2019, to April 1, 2020.

1

2.      Defendant Axonics Modulation Technologies, Inc., (hereafter "Axonics") is a publicly-traded Delaware Corporation with a principal place of business at 26 Technology Drive, Irvine, California 92618. Axonics is engaged in the design, development, and commercialization of medical devices throughout the Commonwealth of Virginia and systematically and regularly conducts business activity within the Commonwealth.

3.      At all times material to this case, Defendant Raymond Cohen was the CEO of Axonics, and is a resident of the State of California.

## JURISDICTION AND VENUE

4.      Based on the claims set forth herein, this Court has jurisdiction over Axonics in this matter pursuant to Va. Code § 17.1-513, as they are a foreign corporation which systematically and regularly conducts business activity within the Commonwealth. Jurisdiction is also proper over this defendant as the tortious injury set forth herein occurred within the Commonwealth and was published on computer networks located within the Commonwealth.

5.      Based on the claims set forth herein, this Court has jurisdiction over Raymond Cohen in this matter pursuant to Va. Code § 17.1-513, as the tortious injury set forth herein occurred within the Commonwealth and was published on computer networks located within the Commonwealth.

6.      Based on the claims set forth herein, venue is proper and preferred in this Court pursuant to Va. Code § 8.01-262(3) and 8.01-262(4).

## FACTS

2

**V I R G I N I A:**

### IN THE CIRCUIT COURT OF NORFOLK

**JEFFREY M. ETTER,**

     **Plaintiff,**

**v.**                                                                      **Civil Case No.:**

**AXONICS MODULATION TECHNOLOGIES, INC.,**

**Serve:**

INTERIM CLERK OF THE STATE CORPORATION COMMISSION
ATTN: BERNARD LOGAN
SERVICE OF PROCESS
1300 EAST MAIN ST.
RICHMOND, VA 23219

**And**

**RAYMOND COHEN**

**Serve:**

AXONICS MODULATION TECHNOLOGIES, INC.
ATTN: CEO RAYMOND COHEN
15326 ALTON PKWY,
IRVINE, CA 92618

     **Defendants.**

### COMPLAINT

COMES NOW the Plaintiff, Jeffrey M. Etter (hereafter "Plaintiff"), by counsel, and for his complaint against Defendants Axonics Modulation Technologies, Inc., Raymond W. Cohen, (hereafter collectively "Defendants"), states as follows:

### PARTIES

1.    Plaintiff Jeffrey Etter is a citizen of the Commonwealth of Virginia and resides in Chesapeake, VA. Plaintiff was employed by Defendant Axonics Modulation Technologies, Inc. from January 15, 2019, to April 1, 2020.

1

2.      Defendant Axonics Modulation Technologies, Inc., (hereafter "Axonics") is a publicly-traded Delaware Corporation with a principal place of business at 26 Technology Drive, Irvine, California 92618. Axonics is engaged in the design, development, and commercialization of medical devices throughout the Commonwealth of Virginia and systematically and regularly conducts business activity within the Commonwealth.

3.      At all times material to this case, Defendant Raymond Cohen was the CEO of Axonics, and is a resident of the State of California.

## JURISDICTION AND VENUE

4.      Based on the claims set forth herein, this Court has jurisdiction over Axonics in this matter pursuant to Va. Code § 17.1-513, as they are a foreign corporation which systematically and regularly conducts business activity within the Commonwealth. Jurisdiction is also proper over this defendant as the tortious injury set forth herein occurred within the Commonwealth and was published on computer networks located within the Commonwealth.

5.      Based on the claims set forth herein, this Court has jurisdiction over Raymond Cohen in this matter pursuant to Va. Code § 17.1-513, as the tortious injury set forth herein occurred within the Commonwealth and was published on computer networks located within the Commonwealth.

6.      Based on the claims set forth herein, venue is proper and preferred in this Court pursuant to Va. Code § 8.01-262(3) and 8.01-262(4).

## FACTS

2

**CERTIFICATE OF MAILING**

This is to certify that a true copy of the foregoing was sent via United States Mail, postage prepaid, this 7 December 2020, to:

RAYMOND COHEN & AXONICS MODULATION TECHNOLOGIES, INC.,
26 TECHNOLOGY DRIVE
IRVINE CA 92618

_____
Counsel

12

7.     Defendant Axonics is a Delaware medical technology company that specializes in implantable sacral neuromodulation systems used to treat patients with urinary tract illnesses.

8.     Axonics was incorporated in the State of Delaware in March 2012 under the name American Restorative Medicine, Inc. and changed its name to Axonics Modulation Technologies, Inc. in August 2013.

9.     Plaintiff was employed by Axonics on January 15, 2019, as a Territory Manager in sales and continued his employment until he was terminated by the Defendants on April 1, 2020.

10.    As an employee of Axonics, Plaintiff's responsibilities included meeting with Value Analysis Committees, hospital administrators, and Integrated Delivery Network executives to promote the sale of the Axonics' Sacral Neuromodulation System.

11.    Plaintiff's professional community consists of a small tightly-knit group of territory managers, sales representatives, clinical specialists, medical providers, and directors that work predominantly in the neuromodulation industry and interact on a consistently.

12.    During his employment with Axonics, Plaintiff was prohibited by restrictions from Axonics and COVID-19 in making sales.

13.    At the time of Plaintiff's hiring, Axonics' Sacral Neuromodulation System was only partially approved for sale by the FDA for fecal incontinence, but was not approved for its primary usage as a urinary continence device until November 2019.

3

14.     Without full FDA approval, Plaintiff was not permitted to make sales of any Axonics products from January 2019 until November 2019.

15.     Furthermore, one of Plaintiff's largest customers was within the Hospital Corporation of America network in Richmond. Due to Axonics contractual restrictions, Axonics restricted Plaintiff from transacting sales to any Hospital Corporation of America network hospitals until April 2020.

16.     Due to these FDA and contractual restrictions, Axonics requested that Plaintiff assist in training other sales representatives and clinical specialists.

17.     From January 2019 until August 2019, Plaintiff assisted with training sales representatives in Irvine, California. Plaintiff was commended on his performance and willingness to be available.

18.     Due to Covid-19 restrictions, elective surgical procedures were suspended on March 25, 2020, pursuant to Govern Northam's Executive Order 52, further restricting Plaintiff's sales.

19.     Further, Plaintiff and others on the sales team were notified that Axonics could not fulfill new orders and were instructed by immediate supervisors in March and April of 2020 to "tap the brakes on getting orders in".

20.     Despite these various restrictions, Plaintiff was able to convert the top implanters in the state to exclusively use Axonics products.

21.     For the remainder of the fourth quarter of 2019, from November to December, Plaintiff was able to sell approximately $34,000.00 in Axonics products to medical providers.

4

**V I R G I N I A:**

### IN THE CIRCUIT COURT OF NORFOLK

**JEFFREY M. ETTER,**

     **Plaintiff,**

**v.**                                          **Civil Case No.:**

**AXONICS MODULATION TECHNOLOGIES, INC.,**

**Serve:**

INTERIM CLERK OF THE STATE CORPORATION COMMISSION
ATTN: BERNARD LOGAN
SERVICE OF PROCESS
1300 EAST MAIN ST.
RICHMOND, VA 23219

**And**

**RAYMOND COHEN**

**Serve:**

AXONICS MODULATION TECHNOLOGIES, INC.
ATTN: CEO RAYMOND COHEN
15326 ALTON PKWY,
IRVINE, CA 92618

     **Defendants.**

### <u>COMPLAINT</u>

     COMES NOW the Plaintiff, Jeffrey M. Etter (hereafter "Plaintiff"), by counsel, and

for his complaint against Defendants Axonics Modulation Technologies, Inc., Raymond

W. Cohen, (hereafter collectively "Defendants"), states as follows:

### PARTIES

     1.     Plaintiff Jeffrey Etter is a citizen of the Commonwealth of Virginia and

resides in Chesapeake, VA. Plaintiff was employed by Defendant Axonics Modulation

Technologies, Inc. from January 15, 2019, to April 1, 2020.

1

2.     Defendant Axonics Modulation Technologies, Inc., (hereafter "Axonics") is a publicly-traded Delaware Corporation with a principal place of business at 26 Technology Drive, Irvine, California 92618. Axonics is engaged in the design, development, and commercialization of medical devices throughout the Commonwealth of Virginia and systematically and regularly conducts business activity within the Commonwealth.

3.     At all times material to this case, Defendant Raymond Cohen was the CEO of Axonics, and is a resident of the State of California.

## JURISDICTION AND VENUE

4.     Based on the claims set forth herein, this Court has jurisdiction over Axonics in this matter pursuant to Va. Code § 17.1-513, as they are a foreign corporation which systematically and regularly conducts business activity within the Commonwealth. Jurisdiction is also proper over this defendant as the tortious injury set forth herein occurred within the Commonwealth and was published on computer networks located within the Commonwealth.

5.     Based on the claims set forth herein, this Court has jurisdiction over Raymond Cohen in this matter pursuant to Va. Code § 17.1-513, as the tortious injury set forth herein occurred within the Commonwealth and was published on computer networks located within the Commonwealth.

6.     Based on the claims set forth herein, venue is proper and preferred in this Court pursuant to Va. Code § 8.01-262(3) and 8.01-262(4).

## FACTS

2

7.     Defendant Axonics is a Delaware medical technology company that specializes in implantable sacral neuromodulation systems used to treat patients with urinary tract illnesses.

8.     Axonics was incorporated in the State of Delaware in March 2012 under the name American Restorative Medicine, Inc. and changed its name to Axonics Modulation Technologies, Inc. in August 2013.

9.     Plaintiff was employed by Axonics on January 15, 2019, as a Territory Manager in sales and continued his employment until he was terminated by the Defendants on April 1, 2020.

10.     As an employee of Axonics, Plaintiff's responsibilities included meeting with Value Analysis Committees, hospital administrators, and Integrated Delivery Network executives to promote the sale of the Axonics' Sacral Neuromodulation System.

11.     Plaintiff's professional community consists of a small tightly-knit group of territory managers, sales representatives, clinical specialists, medical providers, and directors that work predominantly in the neuromodulation industry and interact on a consistently.

12.     During his employment with Axonics, Plaintiff was prohibited by restrictions from Axonics and COVID-19 in making sales.

13.     At the time of Plaintiff's hiring, Axonics' Sacral Neuromodulation System was only partially approved for sale by the FDA for fecal incontinence, but was not approved for its primary usage as a urinary continence device until November 2019.

3

14.     Without full FDA approval, Plaintiff was not permitted to make sales of any Axonics products from January 2019 until November 2019.

15.     Furthermore, one of Plaintiff's largest customers was within the Hospital Corporation of America network in Richmond. Due to Axonics contractual restrictions, Axonics restricted Plaintiff from transacting sales to any Hospital Corporation of America network hospitals until April 2020.

16.     Due to these FDA and contractual restrictions, Axonics requested that Plaintiff assist in training other sales representatives and clinical specialists.

17.     From January 2019 until August 2019, Plaintiff assisted with training sales representatives in Irvine, California. Plaintiff was commended on his performance and willingness to be available.

18.     Due to Covid-19 restrictions, elective surgical procedures were suspended on March 25, 2020, pursuant to Govern Northam's Executive Order 52, further restricting Plaintiff's sales.

19.     Further, Plaintiff and others on the sales team were notified that Axonics could not fulfill new orders and were instructed by immediate supervisors in March and April of 2020 to "tap the brakes on getting orders in".

20.     Despite these various restrictions, Plaintiff was able to convert the top implanters in the state to exclusively use Axonics products.

21.     For the remainder of the fourth quarter of 2019, from November to December, Plaintiff was able to sell approximately $34,000.00 in Axonics products to medical providers.

4

22.     For the first quarter of 2020, from January to March, Plaintiff sold approximately $90,000.00 in Axonics products.

23.     For the first quarter of 2020, from January to March, Plaintiff also submitted an additional purchase order for approximately $120,000.00 to Axonics, but was instructed not to enter this order into Axonics systems as logistical complications precluded Axonics from filling backorders.

24.     Plaintiff never received negative counseling or was cited for employment or behavioral problems at Axonics.

25.     Plaintiff was never given a quota for required sales or metrics upon which to base performance.

26.     On January 13, 2020, and again on February 25, 2020, Plaintiff and other sales representatives were guaranteed in writing that their salaries and bonuses would be extended through September 2020 and that they would not be "laid off".

27.     Upon information and belief, Defendants' assurances were an attempt to protect the stock prices of Axonics in the eyes of investors, which had plunged 40% in a single week due to COVID-19 restrictions on elective procedures, a public USPTO patent-infringement battle with Medtronic PLC, and Axonics' inability to solve logistical supply issues.

28.     Upon information and belief, stock prices were a primary concern to Defendant Cohen's reputation as CEO, and he spent time daily speaking with institutional investors to stem the loss of confidence in Axonics.

5

29.     On or about November 8, 2019, Plaintiff conferred with Michael Messick, his immediate manager, and Al Ford, Chief Commercial Officer of Axonics, that he was suffered from symptoms of PTSD stemming from prior US military service from 1995 to 2001 and that he was seeking medical treatment.

30.     Plaintiff requested reasonable accommodation to a training position, as training others was therapeutic to him. Upon information and belief, this information was also used in the decision to terminate Plaintiff's employment.

31.     On several occasions Defendant Raymond Cohen emailed employees of Axonics addressing the company's backorder problem while including politically charged statements.

32.     On March 18, 2020, Plaintiff replied to one of the emails encouraging Defendant Cohen to be positive and encourage unification rather than division, to which Defendant Cohen responded with an angry email.

33.     On April 1, 2020, one week after receiving communication from Defendant Cohen regarding his politically charged statements, Plaintiff was terminated from his position.

34.     On April 1, 2020 Plaintiff and was defamed by Defendants in a video conference call to all employees of Axonics.

35.     During this conference call, Defendant Cohen spoke about the Defendant and five other sales representative. While live and broadcasting within the Commonwealth on computer networks located within the Commonwealth, Cohen stated:

"...We will be terminating six non-productive sales people out of our sales force and that will be happening effective immediately. This should come as no surprise to anybody. The objective for being in the field is obviously to be productive and sell product and if you are not carrying your own weight it's obviously difficult for the company to carry people, who either it's a [sic] issue of work ethic, lack of production etcetera, etcetera. So that is happening. Having said that that should not be taken as some time of reduction in force. We have no intention to having a reduction in force..."

36.    After his termination, Plaintiff was contacted by approximately 30 people regarding his termination.

37.    Defendants' statements attributed to the Plaintiff unfitness for the duties and responsibility of his profession and that he lacked the moral integrity and diligence warranting employment.

38.    Defendants' statements were made with malice to deflect from poor logistical management, COVID-19 related financial restraints, and were made to retain investor confidence while reducing costs and expenses for the company.

39.    Upon information and belief, Defendants have continued to fire employees through the summer of 2020 while stating emphatically that they have no intention of having a reduction in force.

40.    Upon information and belief, Defendants' statements were made in conjunction with the determination to hide problems from institutional investors at the cost of Plaintiff's career and reputation.

7

41.    The Defendants caused Plaintiff damage to his reputation, career, employment, and other serious harm, and diminished Plaintiff's likelihood of obtaining new employment in the medical technology sales community during a time of pandemic and lower job availability.

## COUNT I: DEFAMATION PER SE v. ALL DEFENDANTS

42.    Paragraphs 1 through 41 are incorporated as if fully pleaded herein.

43.    The law of defamation protects a basic constitutional interest: the individual's right to personal security and the uninterrupted entitlement to enjoyment of his reputation. Gazette, Inc. v. Harris, 229 Va. 1, 7, (1985).

44.    Defendants' false statements constitute defamation per se as they falsely impute against Plaintiff the unfitness to perform the duties of his employment, and/or want of integrity in the discharge of such duties.

45.    Defendants knew these defamatory statements about Plaintiff were false. Alternatively, Defendant acted with reckless disregard for the truth of the statements and willfully lied.

46.    The third parties these statements were published to understood these statements to be referring to the Plaintiff.

47.    Defendants' statements were not made subjectively, as an insinuation or as hyperbole; but were rather statements of fact.

48.    Defendants have engaged in a campaign to discredit, humiliate, slander, and defame per se the employment reputation of the Plaintiff, in an attempt to ensure

8

that investors did not spook from termination of employees by disguising them as terminations for cause during a time of downsizing.

49.     Defendants have maliciously defamed per se the Plaintiff to shift blame for the company's struggles due to Covid-19 and pending litigation matters from Defendants to the Plaintiff.

50.     Defendants' statements alleged herein were punitively published with actual malice, spite, ill will, and with toward the Plaintiff after he expressed discomfort at Defendants' constant public politically-charged statements, and after Defendants gained knowledge of Plaintiff's struggles with PTSD.

51.     Plaintiff continues to suffer damage, harm to his reputation and credibility, and humiliation and mental suffering.

## COUNT II: IN THE ALTERNATIVE - DEFAMATION PER QUOD v. ALL DEFENDANTS

52.     Plaintiff re-alleges paragraphs 1 - 51 as if the same were fully set forth herein.

53.     On April 1, 2020, Defendants intentionally made false statements about the Plaintiff in an attempt to destroy his reputation and cause him harm.

54.     Defendants knew these defamatory statements about Mr. Etter were false. Alternatively, Defendant acted with reckless disregard for the truth of the statements and willfully lied.

55.     The false statements called Plaintiff's reputation and integrity to question exposed Plaintiff to humiliation and mental suffering.

9

56.    Defendants' statements were made with malice and were published to third persons who understood these statements to be referring to the Plaintiff.

57.    Defendants' statements were not made subjectively, as an insinuation, or as hyperbole; but were rather statements of facts.

58.    As a result of these statements, Plaintiff suffered, and continues to suffer, economic damage, emotional harm, and other direct and consequential damages and losses.

## COUNT III: *RESPONDEAT SUPERIOR v. AXONICS*

59.    Plaintiff re-alleges paragraphs 1 - 58 as if the same were fully set forth herein.

60.    At all times relevant to his defamatory statements, Defendant Raymond Cohen was an employee, agent, representative, and CEO of Axonics.

61.    Defendant Raymond Cohen's statements served the goal of his employer, Axonics, in deflecting from poor logistical management, pending litigation, and COVID-19 related financial restraints, while retaining investor confidence and reducing costs and expenses for the company.

62.    These defamatory statements were employed in the furtherance of Axonics' interests.

63.    Pursuant to the doctrine of *respondeat superior,* Defendant Axonics is vicariously liable to the Plaintiff for all injuries and damages sustained and incurred by the Plaintiff as a direct and proximate result of Raymond Cohen's defamatory statement.

10

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court renders judgment in his favor against Defendants, jointly and severally, and grant the following relief:

a.     An order awarding actual and presumed damages in an amount to be determined at trial of at least $400,000.00;

b.     an order awarding punitive damages of at least $350,00.00;

c.     that the costs of this action, including reasonable attorney's fees, be taxed by the Court against Defendant; and

d.     for other and additional relief as this Court deems just and proper.

Respectfully submitted,

JEFFERY ETTER

By: _____
Counsel

James T. Taylor VSB#: 83113
Barry Montgomery VSB#: 43042
Kalbaugh, Pfund & Messersmith, P.C.
Richmond Office
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
james.taylor@kpmlaw.com

11

## CERTIFICATE OF MAILING

This is to certify that a true copy of the foregoing was sent via United States Mail, postage prepaid, this 7 December 2020, to:

RAYMOND COHEN & AXONICS MODULATION TECHNOLOGIES, INC.,
26 TECHNOLOGY DRIVE
IRVINE CA 92618

_____
Counsel

12